IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LORENA SAHAGUN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 12 C 8465 |
| v. ) | |
| ) | Jeffrey T. Gilbert |
| CAROLYN W. COLVIN, ) | Magistrate Judge |
| ACTING COMMISSIONER OF ) | |
| SOCIAL SECURITY,[1] ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Lorena Sahagun ("Claimant") brings this action under 42 U.S.C.§ 405(g), seeking reversal or remand of the decision of Respondent Carolyn W. Colvin, Acting Commissioner of Social Security ("Commissioner"), denying her applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. The parties have consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1 for all proceedings, including entry of final judgment. [DE##9, 11].

This matter is before the Court on the parties' cross-motions for summary judgment. [DE##16, 20]. For the reasons stated herein, the Commissioner's motion for summary judgment [DE#20] is denied. Claimant's motion for summary judgment [DE#16] is granted, and the case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

---

[1] On February 14, 2013, Carolyn W. Colvin became Acting Commissioner of Social Security. Pursuant to Rule 25 of the Federal Rules of Civil Procedure, Carolyn W. Colvin is automatically substituted as the Defendant-Respondent in the case. No further action is necessary to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

# I. PROCEDURAL HISTORY

Claimant filed an application for disability insurance benefits and supplemental security income on February 8, 2008, alleging a disability onset date of August 15, 2006. R. 197-98. Her application was denied initially on April 30, 2008, and upon reconsideration on July 24, 2008, after which Claimant filed a timely request for a hearing before an administrative law judge ("ALJ"). R. 197-200, 255-61. Claimant appeared and testified at a hearing before an ALJ on September 11, 2009, and she was represented by counsel. R. 113, 116-66. A medical expert ("ME") and a vocational expert ("VE") also testified at the hearing. R. 167-94.

Claimant submitted a written closing statement shortly after the hearing in which she asked the ALJ to further develop the record by ordering a psychological consultative evaluation with a full review of Claimant's medical records and psychometric testing. R. 473-76. In support of her request, Claimant argued that she had a mental impairment that was "diagnosed as an affective disorder but complicated by the suggestions in the record that there is a psychogenic component to [her] pain." R. 474. Claimant further argued that the VE's hearing testimony was flawed because it was based on the ME's testimony, and the ME was not qualified to speak to Claimant's psychological residual functional capacity ("RFC"). R. 475.

The ALJ subsequently ordered a psychological consultative evaluation, which was completed by Dr. John Brauer on November 9, 2009. R. 785-93. In light of Dr. Brauer's evaluation and a new VE report based in part on Dr. Brauer's evaluation, Claimant requested a supplemental hearing with a VE and medical adviser in the field of mental health on two occasions. R. 65, 484. The ALJ denied Claimant's requests for a supplemental hearing. R. 233.

The ALJ denied Claimant's application on June 4, 2010, finding her not disabled under the Social Security Act. R. 201-31. Claimant filed a request for review of the ALJ's decision

before the Appeals Council on July 28, 2010. R. 292-94. The Appeals Council vacated the ALJ's decision on October 16, 2010. R. 232-35. The Appeals Council determined that the ALJ erroneously denied Claimant's requests for a supplemental hearing. R. 233. The Appeals Council further determined that the ALJ did not adequately articulate Claimant's RFC. R. 234. The Appeals Council remanded the case to the ALJ to resolve those issues. *Id.* In particular, the Appeals Council ordered the ALJ to offer Claimant an opportunity for a supplemental hearing and to further evaluate Claimant's mental impairments. *Id.*

Claimant appeared and testified at a second hearing before the ALJ on June 6, 2011, and she was again represented by counsel. R. 69, 73-97. A VE also testified at the hearing (R. 98-110), but no ME testified. The ALJ issued a second unfavorable decision on October 21, 2011. R. 19-56. At step one of the sequential evaluation process, the ALJ found that Claimant met the insured status requirements of the Social Security Act through December 30, 2011 and that Claimant had not engaged in substantial gainful activity since August 15, 2006. R. 24. At step two, the ALJ found that Claimant had the severe impairments of fibromyalgia, spondylitis, major depression with psychotic features, and panic disorder without agoraphobia. *Id.* At step three, the ALJ determined that Claimant "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments" described in Appendix 1 of the regulations. R. 24-25.

The ALJ found that Claimant has the RFC to perform light work, as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with the exception that Claimant: should never climb ladders, ropes, or scaffolds; can perform only occasional stooping; must avoid exposure to moving machinery or unprotected heights; can perform no production rate or fast-paced work due to a moderate restriction with respect to concentration, persistence and pace; cannot understand,

3

remember, and carry out complex instructions or make judgments on complex work-related decisions but can understand, remember, and carry out simple, routine instructions; has a moderate (more than slight but still satisfactory) limitation in her ability to respond appropriately to make judgments on simple work-related tasks; has a moderate (more than slight but still satisfactory) limitation in her ability to respond appropriately to usual work situations and to changes in a routine work setting; and has a mild limitation in her ability to interact with the public, coworkers, and supervisors. R. 26.

At step four of the sequential evaluation process, the ALJ found that Claimant was unable to perform any past relevant work. R. 45. At step five, the ALJ found that there were other jobs in the national economy that Claimant could perform. R. 46. Accordingly, the ALJ concluded that Claimant was not disabled under the Social Security Act. R. 23.

The Appeals Council denied Claimant's request for review on August 22, 2012 (R. 1-6), leaving the ALJ's June 4, 2010 decision as the final decision of the Commissioner. 20 C.F.R. § 404.981. This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).

## II. LEGAL STANDARD

### A. Standard of Review

In reviewing the Commissioner's decision, the Court may not "displace the ALJ's judgment by reconsidering facts or evidence, or by making independent credibility determinations." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). Rather, the Court's review is limited to determining whether the decision is supported by substantial evidence and whether the ALJ applied the correct legal standards. *Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009). Substantial evidence is "such relevant evidence as a reasonable mind might accept as

4

adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A "mere scintilla" of evidence is not enough. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002).

Even when there is adequate evidence in the record to support the decision, however, the findings will not be upheld if the ALJ does not "build an accurate and logical bridge from the evidence to the conclusion." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). While the ALJ is not required to address "every piece of evidence or testimony in the record," the analysis "must provide some glimpse into the reasoning behind [the] decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881. 889 (7th Cir. 2001). At a minimum, the ALJ must articulate his analysis "with enough detail and clarity to permit meaningful appellate review." *Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005). If the Commissioner's decision lacks evidentiary support or adequate discussion of the issues, it cannot stand. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009).

## B. Disability Standard

Disability insurance benefits are available to a claimant who can establish she is under a "disability" as defined in the Social Security Act.[2] *Liskowitz v. Astrue*, 559 F.3d 736, 739-40 (7th Cir. 2009). "Disability" means an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual is under a disability if he is unable to do his previous work and cannot, considering his

---

[2] The standard for determining "disability" for SSI is "virtually identical" to that used for disability insurance benefits ("DIB"). *Hankerson v. Harris*, 636 F.2d 893, 895 n.2 (2d Cir. 1980); *see Craft v. Astrue*, 539 F.3d 668, 674 n.6 (7th Cir. 2008) ("Although the Code of Federal Regulations contains separate sections for DIB and SSI, the processes of evaluation are identical in all respects relevant to this case."); *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007); *Knipe v. Heckler*, 755 F.2d 141, 145 n.8 (10th Cir. 1985). Accordingly, this Court cites to both SSI and DIB cases.

5

age, education, and work experience, partake in any gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

A five-step sequential analysis is utilized in evaluating whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). Under this process, the ALJ must inquire, in the following order: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing other work. *Id.* If the ALJ makes a conclusive finding at any step that the claimant either is or is not disabled, then he need not progress to the next step. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004); 20 C.F.R. § 404.1520(a)(4). Once the claimant has proven she cannot continue her past relevant work due to physical limitations, the ALJ carries the burden to show that other jobs exist in the economy that the claimant can perform. *Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007).

### III. BACKGROUND FACTS

Claimant was 45 years old at the time of the second hearing. R. 73. She completed five years of college and holds a bachelor's degree in architecture. R. 117. She stopped working in August 2006 after sustaining injuries in a car accident, for which she was hospitalized for approximately four hours. R. 74, 119-20. Though various medical tests revealed only mild objective findings (R. 36), Claimant continues to experience overall pain, including headaches, jaw and teeth pain due to clenching her jaw, and pain in her neck, shoulders, back, arms, hands, legs, buttocks, knees, and feet. R. 120. She was diagnosed with fibromyalgia by several doctors. R. 536, 602, 737, 741.

Claimant testified that on most days, she experiences pain at a level of eight out of ten, but experiences level ten pain about once per week. R. 80. She attempted a few months of physical therapy in 2006 to relieve her pain, but it did not help. R. 30, 126. She received an epidural steroid injection in July 2009, but it made her pain worse. R. 75, 778, 780. She takes pain medication, but it is ineffective. R. 152.

Claimant also suffers from various mental impairments. She has been diagnosed with major depressive disorder with psychotic features, generalized anxiety disorder, adjustment disorder with depressed mood, panic disorder without agoraphobia, and posttraumatic stress disorder related to driving. R. 32, 34, 35, 601. In March 2011, she reported frequent suicidal ideation to her treating physician and was referred to Advocate Christ Medical Center for intake and direct admission. R. 35, 838. On admission, she reported driving to a pedestrian bridge approximately six months previously and walking onto the bridge with plans to jump off, but changed her mind. R. 35, 874.

A number – at least five – of Claimant's treating physicians have suggested that Claimant's mental impairments aggravate her physical symptoms and vice versa. For example, Dr. Faris Abusharif, Claimant's pain management specialist, opined that "there is significant underlying depression which may be contributing to some other amplification of her pain syndrome." R. 34, 780. He thought Claimant would best be served by consulting with a psychiatrist and felt that his interventions would be ineffective because "the underlying [pain] may [be] confounded by the depression." *Id.* Dr. Rian Rowles, Claimant's psychiatrist, found Claimant's pain to be "very likely worsened by depression and anxiety." R. 796. Dr. Connie Natvig, Claimant's psychologist, diagnosed Claimant as having a "mood disorder due to medical condition" and pursued a course of treatment involving "cognitive behavioral strategies for pain

7

management as well as supportive psychotherapy." R. 671. Dr. Diana Jaime, another of Claimant's treating physicians, opined that Claimant was "fully incapacitated to work" and required a "multidisciplinary" approach to address her symptoms. R. 715. Dr. Joseph Beck, a psychiatrist, said there was "no doubt" that Claimant "has a central nervous system mediated pain syndrome." R. 764.

Other treatment providers noted inconsistencies between their examination findings and Claimant's self-reported pain. Dr. Yasemin Ozcan encouraged an "umbrella-based, behavioral-based comprehensive chronic pain program" and thought Claimant should "at least pursue some pain management-based psychological counseling." R. 602. But Dr. Ozcan also noted that Claimant had "4/5 Waddell's criteria"[3] upon examination and felt the exam was "marred by Waddell's criteria and multiple inconsistencies." R. 39, 602. She wrote Claimant a referral for a formal function capacity evaluation ("FCE") in light of the inconsistencies. R. 603.

Michael Hector, the physical therapist who performed the FCE, found that Claimant's evaluation was "indicative of a general submaximal effort" and that four out of five placebo tests were "definitely positive." R. 40, 633. For example, while Claimant consistently rated her pain at nine or ten out of ten throughout the evaluation, she displayed no observable or measurable factors to corroborate her reports. *Id.* She displayed no facial grimacing, no increased palpable or visual muscle tone throughout activity, and no significant increase in heart rate. R. 633.

In addition, Mr. Hector observed Claimant display an increase in various ranges of motion during functional activities when she was not being tested. *Id.* For example, Claimant was able to tilt her neck at 40 degrees while putting a rubber band in her hair, but upon

---

[3] "Waddell signs are manifestations of pain resulting from specific maneuvers that should not induce back pain, and are used to identify patients reacting to 'psychosocial' factors, such as economics or social issues, including pending litigation." *Hilmes v. Barnhart*, 118 Fed.App'x 56, 58 (7th Cir. 2004). However, malingering is not necessarily the only conclusion to be drawn from the exhibiting of Waddell signs. *Id.* at 61.

8

measurement, was only able to tilt her neck at 0-25 degrees. *Id.* He further observed her bilateral overhead range of motion increase 65 degrees from her self-limits during the evaluation. *Id.* He concluded that the results of the FCE should be viewed through Claimant's self-limiting efforts. R. 634.

## IV. ANALYSIS

Claimant argues that the case should be reversed or remanded because (1) the ALJ failed to consider the combined effect of Claimant's impairments, and (2) the ALJ's adverse credibility assessment is not supported by substantial evidence. After reviewing the parties' briefs and the administrative record, the Court concludes that the ALJ did not adequately address the aggregate effect of Claimant's impairments. Remand is therefore appropriate. Upon remand, the ALJ should also revisit the issue of Claimant's credibility in light of how a proper analysis of Claimant's combination of impairments may impact the ALJ's original credibility determination.

**A. The ALJ did not adequately address the aggregate effect of Claimant's impairments.**

Claimant argues that the ALJ failed to consider her impairments in combination in determining that she is not disabled. Claimant's Brief [DE#16] at 9. The Court agrees.

An ALJ is required to consider the aggregate effect of a Claimant's impairments in determining whether the claimant is disabled under the Social Security Act. *Green v. Apfel*, 204 F.3d 780, 782 (7th Cir. 2000); 42 U.S.C. § 423(d)(2)(B) ("In determining whether an individual [is disabled], the Commissioner of Social Security shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity."); 20 C.F.R. §§ 404.1523, 416.923 ("In determining whether your physical or mental impairment or impairments are of a sufficient medical severity . . . we will consider the combined effect of all of your impairments without regard to whether any

9

such impairment, if considered separately, would be of sufficient severity."). Thus, even if none of a claimant's impairments in isolation are disabling, the combined effect of her impairments may nonetheless cause her to be disabled. *Id.*

In this case, the ALJ analyzed Claimant's physical and mental impairments as discrete phenomena. The ALJ first dismissed Claimant's complaints regarding her physical symptoms due, in large part, to "minimal" objective findings and the fact that "several treating and examining physicians have reported that [Claimant's] pain was not proportionate to objective findings." R. 36. The ALJ gave little to no weight to the opinions of many of Claimant's treating physicians, who opined that Claimant's physical and mental impairments were correlated, and instead, gave great weight to the state agency medical consultants and the ME who testified at Claimant's first hearing. R. 41. Neither the ME nor the state agency medical consultants ever examined Claimant. None of them addressed how Claimant's mental impairments may have aggravated her physical symptoms. Tellingly, the ALJ gave great weight to the same medical opinions in the first hearing decision, which the Appeals Council remanded partly because it did not adequately address Claimant's mental impairments. R. 217, 234. The ALJ's continued reliance on these medical opinions, which focus solely on Claimant's physical symptoms, demonstrates that the ALJ analyzed Claimant's physical symptoms as separate and distinct from her mental impairments.

The ALJ's discussion of Claimant's mental impairments similarly fails to address the aggregate effect of Claimant's impairments. The ALJ's decision acknowledges that Claimant submitted additional evidence regarding her mental impairments on remand, but nevertheless states that the new evidence "does not change [the] opinion." R. 37. In reaching this conclusion, the ALJ focuses on inconsistencies in the record. For example, the ALJ found it to be "of

interest" that Claimant offered differing reports during her psychiatric hospitalization as to when she had suicidal thoughts, at one point saying the thoughts occurred six weeks prior to the hospitalization and at another point saying they occurred six months prior. R. 37. The ALJ also addressed a mental RFC assessment completed by Dr. Rowles, Claimant's treating psychiatrist, which described Claimant's symptoms regarding her understanding and memory, social interaction, and work-related stressors as "moderately severe" to "severe." R. 37, 1024-25. The ALJ gave Dr. Rowles' opinion no weight, finding that his treatment notes and other record evidence were inconsistent with the extreme limitations indicated in the mental RFC. R. 37.

This line of analysis says nothing of how Claimant's mental impairments may have aggravated her physical impairments and vice versa. None of the inconsistencies upon which the ALJ relies in reaching his conclusions address the issue of how the combined effect of Claimant's physical and mental impairments affect her ability to work; the ALJ's analysis merely shows that he does not think Claimant's impairments, in isolation, are as debilitating as Claimant – and Claimant's treating physicians – suggest. The ALJ reviewed Claimant's mental and physical impairments as discrete occurrences rather than in the aggregate, as he was required to do. *See Green v. Apfel*, 204 F.3d at 782; 42 U.S.C. § 423(d)(2)(B); 20 C.F.R. §§ 404.1523, 416.923. This is insufficient. Even if the ALJ is correct that Claimant's mental impairments alone or physical impairments alone are not disabling, he is still required to consider whether those impairments, in combination, cause her to be disabled. *Id.* The ALJ did not do that here.

The ALJ ignored multiple treating physicians' opinions that Claimant's mental and physical impairments exacerbate one another. For example, the ALJ acknowledged that Dr. Abusharif, Claimant's pain management specialist, recommended a psychiatric referral, but did not mention that Dr. Abusharif made that suggestion because he felt "there is significant

11

underlying depression which may be contributing to some other amplification of her pain syndrome." R. 39, 780. Instead, the ALJ found it more significant that Claimant testified she never went to a pain clinic, despite the fact that Dr. Abusharif is a pain management specialist. R. 39. The ALJ focuses on this discrepancy while passing over an important aspect of Dr. Abusharif's opinion: Claimant's mental impairments may exacerbate her pain.

Dr. Natvig, Claimant's psychologist, also opined that Claimant's physical and mental impairments were interrelated, stating that her "mood disorder [is] due to medical condition." R. 671. Yet, while the ALJ acknowledged that Claimant received "8 sessions of pain management treatment [] and depression therapy" and underwent "cognitive behavioral strategies for pain management as well as supportive psychotherapy" with Dr. Natvig, he did not offer any analysis regarding how Claimant's combination of impairments affected her beyond this conclusory remark.

Additionally, the ALJ gave "little weight" to Dr. Jaime's opinion that Claimant is "fully incapacitated to work" (R. 715) because Dr. Jaime did not provide a function-by-function analysis, because he found her opinion to be inconsistent with the record evidence, and because the ultimate decision of whether a claimant is disabled is reserved for the Commissioner. R. 41-42. In dismissing this opinion, however, the ALJ does not sufficiently take into account Dr. Jaime's additional statement that Claimant requires "multidisciplinary medical care" due to both physical and emotional symptoms. R. 715. The ALJ merely reiterates this statement in the decision, but provides no further analysis. Absent any further analysis, the Court cannot tell whether the ALJ adequately considered this aspect of Dr. Jaime's professional opinion.

As previously noted, the ALJ dismissed Dr. Rowles' mental RFC because, in his opinion, it was inconsistent with the evidence in the record and was not supported by more extensive

treatment notes. R. 37. But in doing so, the ALJ made absolutely no mention of Dr. Rowles' statement that Claimant's pain was "very likely worsened by depression and anxiety." R. 796. Just as he did with Dr. Jaime, the ALJ rejected a specific opinion from Dr. Rowles without demonstrating that he considered the entirety of Dr. Rowles' treatment notes.

The ALJ was required to discuss Claimant's impairments in the aggregate even without multiple treatment providers asserting that the impairments were interconnected. But here, with so many treating physicians reaching that very conclusion, the ALJ's failure to do so is even more egregious. It is noteworthy that the ALJ gave little to no weight to many of these treatment providers' opinions because he concluded they were inconsistent with the record evidence. This rationale might be more acceptable if fewer treatment providers opined that Claimant's multiple impairments were correlated. But here, at least five medical professionals offered this opinion. Even Dr. Ozcan, whom the ALJ cites heavily in his decision in order to discredit Claimant's subjective complaints and Claimant's treatment providers' opinions regarding Claimant's impairments, stated that Claimant requires an "umbrella-based, behavioral-based comprehensive chronic pain program" and thought Claimant should "at least pursue some pain management-based psychological counseling." R. 602.

Thus, for the ALJ to conclude that these providers' opinions are not consistent with the record evidence is not entirely accurate. It would be more accurate to say that these opinions are not consistent with the evidence the ALJ relied upon in reaching his conclusion that Claimant is not disabled. The ALJ is not required to address every piece of evidence in the record. *Clifford v. Apfel*, 227 F.3d 863, 872. But he cannot disregard an entire line of evidence that may support a different conclusion than the one he reached. *Id.* at 873-74 (7th Cir. 2000) (citing *Rohan v.*

13

*Chater*, 58 F.3d 966, 971 (7th Cir. 1996)). That is what the ALJ did here. Accordingly, remand is appropriate.

The ALJ purports to account for Claimant's combination of impairments towards the end of his decision by acknowledging that Claimant's "examining physicians have opined that depression or anxiety may have some impact on [her] pain." R. 42. Despite this acknowledgment, at no point does the ALJ's subsequent discussion address the nexus between Claimant's pain and her mental impairments. Instead, the ALJ goes to great lengths to explain why he found Dr. Brauer's opinion regarding Claimant's mental impairments persuasive and reiterates why he rejected Dr. Rowles' mental RFC. R. 42-45. The ALJ also faults Claimant for not seeking more mental health treatment and minimizes the treatment Claimant did receive, describing it as "minimal mental health treatment, consisting of a few visits with a pain psychologist and psychiatrist." R. 42.

Again, this sort of analysis does not account for what effect Claimant's impairments, in combination, may have had on her ability to work. It may be that the ALJ felt Claimant's combination of impairments did not affect her. If that is the case, the ALJ needed to explain why he reached that conclusion.

**B. The ALJ should revisit the issue of Claimant's credibility in light of how a proper analysis of Claimant's combination of impairments may impact the ALJ's original credibility determination.**

Claimant argues that the ALJ's adverse credibility analysis is not supported by substantial evidence. Claimant's Brief [DE#16] at 12. In her brief, Claimant identifies three factors contributing to the ALJ's adverse credibility finding: Claimant's "wide array" of activities of daily living, her failure to seek or pursue treatment, and her inconsistent statements. Claimant's Brief [DE#16] at 12-15. Claimant argues that the ALJ's analysis of these factors "begs reason

14

and is contrary to the Commissioner's own rulings and Seventh Circuit case law." Claimant's Brief [DE#16] at 13.

The ALJ is in the best position to determine a witness's truthfulness, and this Court will not overturn an ALJ's credibility determination unless it is patently wrong. *Shideler v. Astrue*, 688 F.3d 306, 310-11 (7th Cir. 2012) (citing *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004)). However, the basis for the ALJ's credibility determination must be articulated and sufficiently specific to make clear to a claimant and subsequent reviewers the weight given to a claimant's statements and the reasons for the weight given. SSR 96–7p. The ALJ must consider the entire case record in determining credibility, and statements about intensity or persistence of symptoms or about the effect of symptoms on functioning may not be rejected simply because they are not substantiated by objective medical evidence. *Id.*

As discussed above, this case is being remanded so that the ALJ can properly assess the aggregate effect of Claimant's multiple impairments. At this point, the Court is not reviewing the ALJ's credibility determination. Even if the Court were to do so, it would not change its decision to remand under the circumstances of this case as discussed above in Section A. Upon remand, however, the ALJ should revisit his credibility determination in light of any additional light generated by a proper consideration of the total combination of Claimant's impairments.

Additionally, although the Court is not formally reviewing the ALJ's credibility determination, it agrees with Claimant that the ALJ's credibility determination suffers from a number of analytical problems. For example, the ALJ found that Claimant "is not fully credible" (R. 38), thus suggesting that Claimant must be at least partially credible. Yet the ALJ failed to specify which of Claimant's statements were and were not credible. The Seventh Circuit has "repeatedly derided" an ALJ's finding that a claimant is "not entirely credible," with no further

and is contrary to the Commissioner's own rulings and Seventh Circuit case law." Claimant's Brief [DE#16] at 13.

The ALJ is in the best position to determine a witness's truthfulness, and this Court will not overturn an ALJ's credibility determination unless it is patently wrong. *Shideler v. Astrue*, 688 F.3d 306, 310-11 (7th Cir. 2012) (citing *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004)). However, the basis for the ALJ's credibility determination must be articulated and sufficiently specific to make clear to a claimant and subsequent reviewers the weight given to a claimant's statements and the reasons for the weight given. SSR 96–7p. The ALJ must consider the entire case record in determining credibility, and statements about intensity or persistence of symptoms or about the effect of symptoms on functioning may not be rejected simply because they are not substantiated by objective medical evidence. *Id.*

As discussed above, this case is being remanded so that the ALJ can properly assess the aggregate effect of Claimant's multiple impairments. At this point, the Court is not reviewing the ALJ's credibility determination. Even if the Court were to do so, it would not change its decision to remand under the circumstances of this case as discussed above in Section A. Upon remand, however, the ALJ should revisit his credibility determination in light of any additional light generated by a proper consideration of the total combination of Claimant's impairments.

Additionally, although the Court is not formally reviewing the ALJ's credibility determination, it agrees with Claimant that the ALJ's credibility determination suffers from a number of analytical problems. For example, the ALJ found that Claimant "is not fully credible" (R. 38), thus suggesting that Claimant must be at least partially credible. Yet the ALJ failed to specify which of Claimant's statements were and were not credible. The Seventh Circuit has "repeatedly derided" an ALJ's finding that a claimant is "not entirely credible," with no further

explanation, as "meaningless boilerplate." *See Chase v. Astrue*, 458 F.Appx. 553, 558 (7th Cir. 2012) (citations omitted); *see also Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010) ("The statement by a trier of fact that a witness's testimony is 'not entirely credible' yields no clue to what weight the trier of fact gave the testimony."). Accordingly, on remand, the ALJ should avoid such "meaningless boilerplate" in any credibility determination.

The Court also notes that many of the pillars upon which the ALJ builds his credibility analysis do not appear to withstand scrutiny. For example, the ALJ found that Claimant's ability to occasionally drive, help her husband shop for groceries, do some laundry, and cook easy things on a gas stove translates to a "wide array of activities of daily living" and suggests that Claimant is "not as limited as alleged." R. 38. But the ALJ did not explain, and the Court cannot see, how Claimant's ability to occasionally perform these routine tasks demonstrates that she is "not as limited as alleged." More importantly, as Claimant correctly points out, the Seventh Circuit consistently cautions "against placing undue weight on a claimant's household activities in assessing [her] ability to hold a job outside the home." *Mendez v. Barnhart*, 439 F.3d 360, 362 (7th Cir. 2006); *see also Spiva v. Astrue*, 628 F.3d 346, 352 (7th Cir. 2010) (noting that a claimant's ability to perform activities of daily living is not equivalent to an ability to sustain full-time work). The ALJ did not explain, for example, how Claimant's ability to do a few household tasks translates into the ability to work eight hours a day, five days a week.

The ALJ next faults Claimant for her "inconsistent statement[s] regarding her abilities." R. 39. In support of this conclusion, the ALJ notes, among other things, that Claimant testified at her hearing that she has not driven since 2009, but in March 2011 she told a doctor that she recently "drove through a bridge." *Id.* The ALJ fails to mention that Claimant "drove through a bridge" in March 2011 because she was attempting to commit suicide. R. 869. That does not

16

suggest Claimant can or did drive on a regular basis after 2009. The ALJ points to no other record evidence apart from this nonsensical "inconsistency" to discredit Claimant's testimony that she does not drive.

The ALJ also takes issue with Claimant's testimony that she has trouble sleeping because at one point in September 2006 – almost five years prior to her June 2011 hearing – she told a doctor that she was sleeping well at night. R. 39. The ALJ points to no other record evidence to discredit Claimant's statement. These examples, and others in the ALJ's opinion, are indicative of the sort of "nit-picking cynicism that does not withstand scrutiny" (Claimant's Brief [DE#16] at 13). *See Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) ("An ALJ has an obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding.") (citing *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009)).

On top of the alleged inconsistencies in Claimant's statements, the ALJ also relies heavily on "notations from health care providers [which] suggest that [Claimant's] allegations of pain are not fully credible" and the fact that "physicians observed multiple inconsistencies on examination" in reaching his conclusion that Claimant is not credible. R. 38-39. The ALJ cites, for example, Dr. Ozcan's report finding four out of five Waddell's criteria present and Mr. Hector's FCE in which four out of five placebo tests were positive. R. 39-40. As discussed above, the ALJ did not adequately consider the combined effect of Claimant's impairments and failed to discuss the multiple treating physicians who opined that Claimant's physical and mental impairments aggravated one another. Thus, upon remand, the ALJ should review any inconsistencies in Claimant's medical records in the context of his consideration of Claimant's

combination of impairments and re-consider what impact that may have, if any, on his credibility finding.

Lastly, Claimant points out that the ALJ implicitly criticized her for not seeking or pursuing more aggressive treatment. Claimant's Brief [DE#16] at 13. While this does not directly factor into the ALJ's credibility analysis, upon remand, the ALJ should not draw any inferences about Claimant's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that Claimant may provide, or other information in the case record, that may explain any infrequent or irregular medical visits or failure to seek medical treatment. SSR 96–7p. For example, while the ALJ takes issue with Claimant because she "attempted" but "did not persist with treatment" for fibromyalgia, it should be noted that Dr. Abusharif, Claimant's pain management specialist, opined that he had no further recommendations for Claimant. R. 780. It is precisely this sort of scenario that the Social Security Administration requires an ALJ to take into consideration before drawing any inferences about a claimant's perceived insufficient medical treatment. SSR 96–7p ("The individual may have been advised by a medical source that there is no further, effective treatment that can be prescribed and undertaken that would benefit the individual.").

## V. CONCLUSION

For the reasons set forth above, the Commissioner's motion for summary judgment [DE#20] is denied. Claimant's motion for summary judgment [DE#16] is granted, and this matter is remanded to the Social Security Administration for further proceedings consistent with the Court's Memorandum Opinion and Order.

It is so ordered.

Jeffrey T. Gilbert
United States Magistrate Judge

Dated: November 21, 2014